Richardson, J.
dissenting. There is no mistaking the fact* of this case. The defendant admitted that he had passed the ferry, and it was proven that the rates of ferriage had not been put up, as required by the act. The case is simply and unquali-fiedly that of every traveller who passes a ferry, and refuses to pay the established rates of ferriage, not because he did not know the rates, but because notice of the rates of ferriage had not been put up in some conspicuous place, as required by law. No special agreement is alleged, and none proven; and we art, therefore, merely to inquire, what is the law for such cases, without any peculiar regard for this particular case.
The law is clear, in letter and in spirit; and the whole bench are unanimous in this construction of the act: that unless the notice required be kept up, the owner of the ferry forfeits his right to receive the toll; and that it is not a forfeiture to the'' *435 State for receiving the toll, without a notice, in the nature of a mulct, or fine, but of the right to receive the toll from the travel-ler. The policy and object of the enactment are palpable. The public notice is a condition precedent to the right to receive the toll; and this sine qua non, expressly made by the act, is, to prevent habitual impositions, and imperceptible extensions of the rates of ferriage, which so often begin with good, easy men, and end in practical law by the contagious acquiesence of many travellers.
The. presiding Judge evidently overlooked the preventive policy of the law, in supposing the act meant, merely, that if the traveller knew the rates of ferriage, the right to toll attached. He thought the individual knowledge of the defendant a legal substitute for the public notice, and the end required by it. Is •such a substitution good % Is such a construction legal 1 In my judgment it would practically repeal the act; because every traveller, when he has been carried over a ferry, must be informed, as the defendant was, of the rates, before he can pay his ferriage. The Judge evidently means, that inasmuch as when the toll had been paid, a return of the money cannot be had, for the want of the public notice, it follows, that the want of the notice is no defence after an implied promise to pay, arising out of the fact of passing the ferry with a knowledge, no matter how obtained, of the rates of ferriage. He charged the jury, that the intention of the Legislature was to apprise persons passing a ferry of the rates to which the law subjected them, and thus to guard against imposition. Now here is a plain substitution of the knowledge of the defendant, and the morality which ought to have governed him, for the precedent condition required by the act. The predicate of the charge is, that the knowledge of the defendant, and his implied assumpsit, constitute the foundation of the action; whereas, the only legal foundation of the plaintiff’s right was the public notice. No express promise was alleged, or proven; but, on the contrary, there was a refusal to pay, for want of the public notice, whilst the mere fact of passing the ferry was admitted, and the absence of all public notice proven, as an estoppel to the action.
The case appears to me as if made to elicit a decision upon the question, whether the public notice is rendered by the act a condition precedent to the right to demand the toll, in a case *436 where there was no agreement whatever, but what follows from the law, and the fact of passing the ferry: and the whole argument turns upon the inquiry, whether the forfeiture was to the State, for not giving the public notice required, or a forfeiture of the right to receive the toll for the same reason. If the former, the action lay; if the latter, the recovery was incompetent. And the decision either preserves, or leaves at varying discretion, and the feelings engendered in every particular case, the wholesome policy of the statute.
Whenever a verdict has been given, consistently with the merits arid moral justice of a case, a resort to the summum jus is not to be regarded as sufficient in a motion for a new trial. In such a case we could merely substitute our own estimate of the facts for that of the jury, inasmuch as we can fix upon no intelligible rule, or principle, which estops the verdict, or which should govern such cases generally; and the verdict stands because we cannot say, per leges, it ought to have been for the opposite party. But whenever the legal right of the plaintiff to recover depends primarily upon a rule of law, or upon the construction of a statute, as in this case, there, any error of law in the instruction given to the jury by the Judge, ipso facto, destroys the verdict, which is consonant to the charge. Now this is the precise case before us. The moment we decide what is the true construction of the act, we destroy the right of the plaintiff, and pronounce the fate of the action. Í cannot therefore assent to a verdict which, although it may have arrived at individual justice, yet violates the positive enactment of the Jaw, and may afford room for the same violation in any other similar case.
Motion refused.